OPINION
{¶ 1} Appellant, Jack Davis, timely appeals his convictions for gross sexual imposition and rape rendered in the Mahoning County Court of Common Pleas. Appellant was convicted of raping and molesting over a period of time his child's babysitter and one-time neighbor, who was ten years old at the time the offenses began.
 {¶ 2} The jury determined that Appellant was guilty of two counts of gross sexual imposition in violation of R.C. § 2907.05(A)(4)(B), felonies of the third degree, and one count of rape in violation of R.C. § 2907.02(A)(1)(b)(B), a felony of the first degree. He was sentenced to two, three-year sentences for his sexual imposition offenses consecutive to a seven-year term for rape; a total of 13 years in prison. The court also imposed a fine of $5,000 and $10,000, which were suspended. Appellant was also designated as a sexually oriented offender and is subject to five years of post release control.
 {¶ 3} Appellant argues on appeal that the evidence was insufficient to convict him, and as such, the trial court should have granted his motion for acquittal. He also argues that the jury's verdict was against the manifest weight of the evidence and that the trial court erred in admitting a photograph of the victim as evidence. For the following reasons, however, Appellant's arguments lack merit and his convictions are affirmed in full.
 {¶ 4} Appellant's first assignment of error asserts,
 {¶ 5} "THE TRIAL COURT ERRED IN OVERRULING THE CRIMINAL RULE 29 DEFENSE MOTION FOR JUDGMENT OF ACQUITTAL AS THE EVIDENCE *Page 2 
PRESENTED WAS INSUFFICIENT AS A MATTER OF LAW TO SUSTAIN THE APPELLANT'S CONVICTION."
 {¶ 6} Crim.R. 29(A), motion for acquittal, states in part,
 {¶ 7} "The court on motion of a defendant * * * shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."
 {¶ 8} Appellate courts review a denial of a Crim.R. 29 motion for acquittal using essentially the same standard as they do when reviewing a sufficiency of the evidence claim. State v. Carter (1995),72 Ohio St.3d 545, 553, 651 N.E.2d 965. A sufficiency of the evidence argument presents a purely legal question for the court, requiring it to assess whether the evidence is legally adequate to support a jury verdict on all the elements of a crime. State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212; State v. Thompkins (1997), 78 Ohio St.3d 380, 386,678 N.E.2d 541. In viewing the evidence in a light most favorable to the state, a court must determine whether, "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 9} R.C. § 2907.05(A)(4) gross sexual imposition states in part,
 {¶ 10} "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; * * * when any of the following applies: *Page 3 
 {¶ 11} "* * *
 {¶ 12} "(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person."
 {¶ 13} R.C. § 2907.02 rape states in pertinent part,
 {¶ 14} "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when any of the following applies:
 {¶ 15} "* * *
 {¶ 16} "(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person."
 {¶ 17} In the instant matter, a review of the evidence supports the trial court's denial of Appellant's motion for acquittal made at the close of the state's evidence.
 {¶ 18} The record reflects that the victim's family resided across the street from Appellant's wife, Alice, in Struthers, Ohio, before she married Appellant. The victim's mother and Alice became close friends and the victim often visited Alice and her children. Alice married Appellant and gave birth to his child. The victim's family subsequently moved a few minutes away, but the families remained close and the victim continued her frequent visits to Appellant and Alice's home. (Tr., pp. 235-236, 316-318.)
 {¶ 19} The victim would frequently baby sit at Appellant's home and when it would get too late, she slept on their couch. The victim described at trial how Appellant would often wake her up in the morning by rubbing her back. During the first sexual touching, the victim recalls that everyone in Appellant's house was still *Page 4 
asleep. She was ten years old at the time. Appellant woke her up by touching her. He put his hand in her underwear and he touched her vagina and her buttocks. He then touched her breasts. The victim stated that she did not want to do anything about the touching because she was afraid of Appellant's reaction. She tried rolling over pretending to be asleep, but when she rolled to her stomach, he would just touch her buttocks, and vice versa. She did not tell anyone about the touching because she was afraid. (Tr., pp. 238, 241-242, 243.)
 {¶ 20} The inappropriate touching happened again days later. In fact, the victim said that it happened several times. Once, when the victim was eleven years old, Appellant pulled her pants down while she was sleeping and licked her vagina. Later, Appellant touched her and tried to insert his finger into her vagina, which caused her pain. During one incident Appellant told her, "Alice liked it this way." (Tr., pp. 242, 244-245, 246-247.) The victim also said Appellant tried to make her touch his penis, but she pulled her hand away. (Tr., p. 252.)
 {¶ 21} The victim testified that eventually, "she couldn't take it anymore." She asked him what he was doing and she began crying in fear. Appellant warned her that if she told anyone what happened her name and face would be in the newspaper and on the news and everyone would know. (Tr., p. 249.)
 {¶ 22} On the last occurrence, Alice went to a concert and the victim did not want to baby sit. Her mother thought she was being obstinate. She reluctantly went, but brought her little sister with her. This time Appellant touched her in the middle of the night. The victim recalled being very upset when her little sister wanted to stay *Page 5 
the night because she thought Appellant would touch her also. The victim finally told her mother the next morning that Appellant had been touching her so that her mother would pick up her sister. (Tr., pp. 254-255, 257.)
 {¶ 23} The victim's mother also testified. She confirmed the victim's story and described her confrontation with Appellant. He told her that the victim was simply angry with him for not helping her with her science project. (Tr., pp. 325-327.)
 {¶ 24} Janet Gorsuch, a certified pediatric nurse practitioner, interviewed and examined the victim concerning the abuse. The victim told her that Appellant molested her three times. She told Gorsuch that Appellant had fondled and digitally penetrated her. Gorsuch inspected the victim's genital area with a colposcope, a magnifying instrument, and she identified a tear in the victim's hymen. Gorsuch testified that her findings were consistent with digital penetration. (Tr., pp. 402, 404, 406.)
 {¶ 25} Appellant testified on his own behalf and wholly denied the victim's allegations. (Tr., pp. 459, 466.)
 {¶ 26} On appeal, Appellant takes issue with the fact that the victim could not recall the specific dates of the offenses. However, the victim clearly recalled and testified that Appellant inserted his finger in her vagina once, and performed cunnilingus once. She also stated that Appellant woke her up by inappropriately rubbing her, "[q]uite a few times." (Tr., pp. 247-248.) Contrary to Appellant's argument, there is absolutely nothing in either statute requiring testimony to establish the exact dates of the offenses. R.C. §§ 2907.05(A)(4); 2907.02(A)(1)(b). *Page 6 
 {¶ 27} Appellant also argues that the state failed to establish the number of times the victim was assaulted, complaining that the record does not establish whether the sexual offenses happened three or seven times. The victim's inability to pinpoint the exact number of times she was molested does not invalidate the fact that she specifically recalled at least three separate occasions. She told Gorsuch that the offenses happened three times. Thus, at least three incidents were before the jury and supported by the evidence. This argument lacks merit since the victim's testimony supports his three convictions.
 {¶ 28} Appellant also argues that the identification of a notch or a tear in the victim's hymen by Gorsuch, a certified pediatric nurse practitioner was improper. He claims that there is no evidence the tear was caused by Appellant. Thus, he argues it was pure speculation and should not be considered as evidence to substantiate the victim's claims. Appellant overlooks the fact that Gorsuch testified an eleven-year-old's hymen does not become torn simply by riding a horse or other physical activity. She explained instead that a tear of the hymen at this age is caused by some type of blunt force trauma or penetration and that the victim described Appellant penetrating her with his finger. On this basis, Gorsuch testified that the victim's injury was consistent with her description of the incidents. (Tr., pp. 406-407.) Gorsuch did not improperly claim Appellant was at fault; merely that the injury was consistent with the victim's description.
 {¶ 29} Based on the foregoing, Appellant's convictions were supported by sufficient evidence. The victim described several incidents during which Appellant *Page 7 
improperly touched her. She also stated that he tried to digitally penetrate her once and that he performed cunnilingus once. She was ten to eleven years old at the time. As such, the trial court certainly did not err in denying Appellant's motion for acquittal, and this assignment of error is overruled.
 {¶ 30} Appellant's second argument asserts,
 {¶ 31} "APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 32} When an appellate court reviews a judgment in a manifest weight of the evidence argument, it must weigh all of the evidence and all reasonable inferences, and consider the credibility of the witnesses and determine whether the jury clearly lost its way, creating a manifest miscarriage of justice. This should only be exercised in the extraordinary case when the evidence weighs heavily against the conviction. State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717. In addition, reviewing courts must be cognizant of the fact that the jury is in the best position to judge the credibility of witnesses and to weigh the evidence. State v. DeHass (1967), 10 Ohio St.2d 230,231, 227 N.E.2d 212.
 {¶ 33} In this assignment of error, Appellant simply refers this Court to his previous assignment of error and mentions the lack of verifiable corroborating evidence to the victim's testimony. Contrary to this claim, there was nothing before the trial court tending to undermine the victim's testimony. She did not recall the specific dates of the offenses, but gave concise descriptions of the offenses. Her mother corroborated her testimony to a great extent. Also, there was no evidence to *Page 8 
contradict Gorsuch's testimony, which was consistent with testimony of the victim and the victim's mother's.
 {¶ 34} Appellant denied these allegations to the jury; they did not believe him. Appellant overlooks the fact that there is nothing in the record establishing or supporting Appellant's testimony or credibility. The evidence does not reflect that the jury erred and there is certainly nothing on which we will find a manifest miscarriage of justice occurred. Appellant's second assignment of error lacks merit and is overruled.
 {¶ 35} In Appellant's third and final assignment of error he alleges,
 {¶ 36} "THE TRIAL COURT ERRED IN ADMITTING THE PHOTOGRAPHIC EVIDENCE (STATE'S EXHIBIT 1) OF THE VICTIM."
 {¶ 37} A trial court judge has broad discretion in admitting or excluding evidence. Evid.R. 403 requires a trial court to weigh the danger of unfair prejudice against its probative value. Thus, the standard of review for the admission of evidence is an abuse of discretion. State v. Sage (1987), 31 Ohio St.3d 173, 510 N.E.2d 343;State v. Bey (1999), 85 Ohio St.3d 487, 490, 709 N.E.2d 484. In order to find an abuse of discretion, we must find more than an error of law or judgment. An abuse of discretion demonstrates that the court's attitude was unreasonable, arbitrary, or unconscionable. State v. Adams (1980),62 Ohio St.2d 151, 157, 404 N.E.2d 144. *Page 9 
 {¶ 38} Appellant claims that the trial court's decision to admit the victim's fifth grade school picture into evidence was error. Appellant argues that this picture lacked probative value and served only to inflame the passions of the jury.
 {¶ 39} Contrary to Appellant's arguments, however, the record reveals that the victim was sixteen years old and in the eleventh grade at the time of trial. She was ten to eleven years old at the time of the offenses. Her mother described at trial that the photograph accurately depicted what she looked liked in the fifth grade. (Tr., pp. 232-233, 240, 244, 347.) Hence, the photograph was probative and there is nothing prejudicial in allowing the jury to see just what a ten or eleven year old girl looked like.
 {¶ 40} There was no abuse of discretion on the part of the trial court. The photograph depicted the victim at the time of the offenses and had probative value. As such, this assignment of error lacks merit and is also overruled.
 {¶ 41} Because all of Appellant's assignments of error lack merit and are overruled, the trial court's decision is affirmed in its entirety.
 Donofrio, J. and DeGenaro, P.J., concurs. *Page 1